**Exhibit "3"**

| STATE OF NORTH DAKOTA | IN DISTRICT COURT |
|---|---|
| COUNTY OF RENVILLE | NORTHEAST JUDICIAL DISTRICT |

| | |
|---|---|
| Greg Pollard, Kiat Tze "Kenny" Goh, and Sparrow Oil & Gas LLC, | Case No. 38-2023-CV-00007 |
| Plaintiffs, | |
| v. | **ORDER GRANTING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER** |
| Geary Trigleth, Bison Land & Minerals LLC, and EnTec Services, LLC, | |
| Defendants. | |

[¶ 1]   Before the Court is the Motion for Temporary Restraining Order filed by Plaintiffs Greg Pollard ("Pollard"), Kiat Tze Goh ("Goh"), and Sparrow Oil & Gas LLC ("Sparrow") pursuant to N.D.R.Civ.P. 65(a). Plaintiffs request the Court restrain Defendants Geary Trigleth ("Trigleth"), Bison Land & Minerals, LLC ("Bison"), and EnTec Services, LLC ("EnTec") (collectively, "Defendants") from undertaking certain harmful actions concerning four oil and gas wells and related mineral interests in Renville County, North Dakota. The Court has considered Plaintiffs' supporting brief, declarations, exhibits, and proposed complaint. Upon review and consideration, the Court hereby **GRANTS** Plaintiffs' motion and enters the following findings of fact and conclusions of law. *See* N.D.R.Civ.P. 52 and 65(g)(1).

## CONCLUSIONS OF LAW

[¶ 2]   "A temporary restraining order is short-lived injunctive relief that the court may issue with less notice than required for a preliminary injunction. It prevents irreparable injury until the court decides whether to issue a preliminary injunction." N.D.R.Civ.P. 65(a). The decision to

issue a temporary restraining order "rests in the sound discretion of the district court." *State ex rel. City of Marion v. Alber*, 2019 ND 289, ¶ 10, 936 N.W.2d 52 (citation omitted).

[¶ 3] A party seeking a temporary restraining order must establish three elements to be entitled to relief:

> (3) *Basis for Relief.* The court may issue a temporary restraining order only if it finds:
> (A) appropriate injunction grounds;
> (B) a clear need for immediate relief; and
> (C) either:
> (i) the moving party gave reasonable notice or made reasonable efforts to give reasonable notice to the opposing party's attorney, if known, or if not known, to the opposing party; or
> (ii) a substantial reason exists for not giving notice.

N.D.R.Civ.P. 65(a)(3). As this rule is modeled after the federal rule, *see* N.D.R.Civ.P. 65 (Editors' Notes), "federal court interpretations . . . are highly persuasive in construing our rule." *Thompson v. Peterson*, 546 N.W.2d 856, 860 (N.D. 1996). Each element is addressed in turn below.

## I. Appropriate injunctive grounds are present.

[¶ 4] Rule 65(a)(3) requires Plaintiffs to show "appropriate injunction grounds," which "is based on the following factors: (1) substantial probability of succeeding on the merits; (2) irreparable injury; (3) harm to other interested parties; and (4) effect on the public interest." *State ex rel. City of Marion*, 2019 ND 289, ¶ 12. All four factors support Plaintiffs.

### A. There is a substantial probability that Plaintiffs will succeed on the merits.

[¶ 5] "Success on the merits has been referred to as the most important" factor when considering injunctive relief. *Jet Midwest Int'l Co., Ltd v. Jet Midwest Grp., LLC*, 953 F.3d 1041, 1044 (8th Cir. 2020). This standard does not mean Plaintiffs must show they "will ultimately win," *id.*, but "simply show a fair chance of prevailing," *White Rock Oil & Gas, LLC v. Krank*,

2

No. 1:20-CV-00209, 2020 WL 8268881, at *4 (D.N.D. Dec. 30, 2020) (citations and quotations marks omitted).[1] As a result, "'[i]t is not necessary that . . . [Plaintiffs'] rights be clearly established, or that the [C]ourt find [Plaintiffs are] entitled to prevail on the final hearing.'" *Gunsch v. Gunsch*, 69 N.W.2d 739, 750 (N.D. 1954).

[¶ 6]   Plaintiffs' proposed complaint alleges that Defendants have threatened to plug the wells, threatened to transfer Bison's working interest in them, and have refused to provide an accounting. Plaintiffs seek a declaratory judgment regarding the parties' rights and obligations, including their entitlement to an accounting. Plaintiffs also seek injunctive relief prohibiting Defendants from plugging or otherwise irreparably harming any of the wells, continuing any operations while excluding Pollard and Goh, and transferring Bison's working interest. Plaintiffs further allege claims for specific performance, breach of contract, and breach of fiduciary duties arising out of Defendants' conduct.

[¶ 7]   Plaintiffs satisfy their obligation to establish they have a fair chance of prevailing in this matter for several overarching reasons.

   *1. The threatened conduct and failure to provide information violates duties owed.*

[¶ 8]   First, the threatened conduct and refusal to provide an accounting violate duties Trigleth owes. *See* N.D.C.C. § 10-32.1-72 (the law of the state in which a limited liability company is formed governs "[t]he internal affairs of the company"). Trigleth acted as the manager or managing member of Bison, and "Delaware law presumes that managers of limited liability companies owe fiduciary duties unless explicitly disclaimed." *Largo Legacy Grp., LLC v. Charles*, No. CV 2020-0105-MTZ, 2021 WL 2692426, at *12 (Del. Ch. June 30, 2021). And unless

---

[1] *See also PCTV Gold, Inc. v. SpeedNet, LLC*, 508 F.3d 1137, 1143 (8th Cir. 2007) (similar).

3

expressly limited, "the manager has a fiduciary duty to manage the entity in its interest and in the interests of its members." *Id.* (citations omitted).

[¶ 9] These duties include duties of care and loyalty. *Id.* If Trigleth proceeds to plug the wells or dilute the working interest of Bison, he will have violated duties owed to Pollard and Goh as members of Bison. Additionally, Pollard and Goh are entitled to seek information regarding Bison's activities and accounting records by statute. *See* Del. Code Ann. tit. 6, § 18-305; N.D.C.C. § 10-32.1-42[2]. Separately, Pollard and Goh may seek an accounting under the Court's equitable jurisdiction when considering North Dakota's three-pronged analysis. *See Ritter, Laber & Assocs. v. Koch Oil, Inc.*, 2004 ND 117, ¶ 31, 680 N.W.2d 634.

*2. The threatened conduct would violate North Dakota oil and gas law.*

[¶ 10] Plaintiffs have also established a substantial likelihood of success under North Dakota law. Trigleth may not plug any wells without the Commission's approval. *See* N.D.C.C. § 38-08-04(1)(b)(1); N.D. Admin. Code § 43-02-03-33. And plugging the wells or diluting Bison's working interest would violate North Dakota's statutory and regulatory schemes preventing waste.

[¶ 11] "One of the purposes of N.D.C.C. ch. 38-08 is to protect minerals by preventing the waste of oil and gas, which includes the unnecessary destruction of oil or gas." *Vogel v. Marathon Oil Co.*, 2016 ND 104, ¶ 24, 879 N.W.2d 471 (citing N.D.C.C. §§ 38-08-01, 38-08-02(19), and 38-08-03). Thus, "[a]ll operators . . . shall at all times conduct their operations in the drilling, equipping, operating, producing, plugging, and site reclamation of oil and gas wells

---

[2] Section 18-305 provides exclusive jurisdiction to Delaware courts. Because Delaware's statute does not apply, North Dakota's LLC inspection statute may therefore govern despite the fact Bison was formed in Delaware. *See Havlicek v. Coast-to-Coast Analytical Services, Inc.*, 46 Cal. Rptr. 2d 696, 697 (Cal. App. 2d Dist. 1995) (California statute permitting inspection applied in case involving Delaware corporation); *Sachs v. Adeli*, 26 A.D.3d 52, 58 (N.Y. App. Div. 2005) (New York law applied with respect to inspecting a Delaware LLC's records, notwithstanding Del. Code Ann. tit. 6, § 18-305).

in a manner that will prevent waste." N.D. Admin. Code § 43-02-03-06; *accord* N.D.C.C § 38-08-03 ("Waste of oil and gas is prohibited.").

[¶ 12] It would be improper for Trigleth or Bison (at Trigleth's direction) to plug any of the Four Wells, particularly without Commission approval. Such improper actions may result in the Commission imposing civil penalties against Bison, which Pollard and Goh have an interest in preventing as members of Bison. Additionally, Pollard and Goh may have a cause of action under the Environmental Law Enforcement Act, N.D.C.C. ch. 32-40. *See Vogel*, 2016 ND 104, ¶¶ 24-28. Royalty and working interest owners may likewise present claims. The same actions also run afoul of common law waste: "Waste may be defined as an unreasonable or improper use, abuse, mismanagement, or omission of duty touching real estate by one rightfully in possession, which results in a substantial injury." *Meyer v. Hansen*, 373 N.W.2d 392, 395 (N.D. 1985).

### B.     Plaintiffs will suffer irreparable injury without a temporary restraining order.

[¶ 13] The second factor considers irreparable injury. *State ex rel. City of Marion*, 2019 ND 289, ¶ 12. "Courts can presume irreparable harm if the movant has established a probability of success on the merits of their claim." *EZ Blockchain LLC v. Blaise Energy Power, Inc.*, 589 F. Supp. 3d 1102, 1109 (D.N.D. 2022) (collecting cases). The Court presumes irreparable harm in this case because Plaintiffs have demonstrated a likelihood of success.

[¶ 14] Plaintiffs have also shown they will suffer irreparable injury under an independent analysis of this factor. "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages," *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009), or "where monetary damages are difficult to ascertain. . . .'" *Medtronic, Inc. v. Gibbons*, 527 F. Supp. 1085, 1092 (D. Minn. 1981) (collecting cases), *aff'd*, 684 F.2d 565 (8th Cir. 1982). *See also Jet Midwest Intl.*,

953 F.3d at 1046 (irreparable harm where "damages would be hard to calculate"). Moreover, "[t]he threat of unrecoverable economic loss . . . [will] qualify as irreparable harm." *Iowa Utilities Bd. v. F.C.C.*, 109 F.3d 418, 426 (8th Cir. 1996).

[¶ 15] Pollard and Goh are faced with irreparable harm. As drilling for the West Dry Creek well was being completed, data indicated that the well would be productive. If the well were plugged now, as Trigleth suggests will happen, it would be difficult to ascertain just how much revenue would be lost. *See also Textron Fin. Corp. v. Childress*, 5:09-CV-00149-SWW, 2009 WL 10676813, at *4 (E.D. Ark. May 29, 2009) (granting temporary restraining order preventing disposition of collateral).

[¶ 16] The Court finds that the uncertainty of the ultimate recovery of oil from the well, combined with the unpredictable prices of oil and gas that would be produced from the well, would render calculation of damages difficult if not impossible. It is for similar reasons that, if Trigleth dilutes the working interest in the West Dry Creek well, Pollard and Goh would suffer irreparable harm, as monetary damages for the dilution of Bison's interest in production from the wells would be difficult to ascertain.

[¶ 17] Likewise, the threatened conduct would destroy the benefit of the bargain that Plaintiffs were to receive under the agreement that Sparrow would be assigned and assume operation of the North Dakota properties in exchange for Pollard and Goh giving up their shares in Bison and withdrawing. The threatened conduct would destroy Plaintiffs' goodwill with royalty owners and working interest owners, who invested in the West Dry Creek well believing that the operator would retain an interest and participate in the well, not merely act as a contract operator. *See EZ Blockchain*, 589 F. Supp. 3d at 1109 ("Potential loss of consumer goodwill qualifies as irreparable harm."); Doc. ID# 19 (sample, blank Participation Agreement – Smith Embayment

Project at ¶ 2) ("It is contemplated that the aggregate of new parties under this agreement shall acquire up to an undivided 80% working interest in the Initial Horizontal Project.").

### C. Defendants will not suffer harm.

[¶ 18] The third factor considers harm to other interested parties. *State ex rel. City of Marion*, 2019 ND 289, ¶ 12. A temporary restraining order does not harm Defendants but merely preserves the oil and gas wells from being damaged. There is no harm to Defendants in precluding them from presently transferring Bison's interest to third parties. Nor is there harm to Defendants in pausing all operations so Pollard and Goh may receive information and be present to monitor operations. By contrast, the potential harm to Plaintiffs in not issuing a restraining order is great. *See EZ Blockchain*, 589 F. Supp. 3d at 1110.

### D. A temporary restraining order furthers public interest.

[¶ 19] The final factor considers the effect of the temporary restraining order on public interest. *State ex rel. City of Marion*, 2019 ND 289, ¶ 12. As legislatures determine public policy in our system of government, courts often look to legislation in deciding the fourth factor. *See, e.g., White Rock Oil & Gas*, 2020 WL 8268881, at *7 ("Granting the preliminary injunction will serve the public interest as stated by the North Dakota Legislature.")[3].

[¶ 20] North Dakota's Legislative Assembly has found it "in the public interest to foster, to encourage, and to promote the development, production, and utilization of natural resources of oil and gas in the state in such a manner as will prevent waste[.]" N.D.C.C. § 38-08-01; *see also* N.D.C.C. § 38-08-03 ("Waste of oil and gas is prohibited."). In pertinent part, "waste" means:

> "Waste" means and includes:
> a. Physical waste, as that term is generally understood in the oil and gas industry.

---

[3] *See also Schulz v. U.S. Boxing Ass'n*, 105 F.3d 127, 134 (3d Cir. 1997) ("[W]e turn to the enactments of the state legislature as an authoritative source."); *Rodriguez v. Molina*, --- F. Supp. 3d ----, No. 422CV00183SMRHCA, 2022 WL 2287805, at *6 (S.D. Iowa June 24, 2022) ("Congress made several findings on the public interests at stake in cases such as these ones.").

7

>b. The inefficient, excessive, or improper use of, or the unnecessary dissipation of reservoir energy.
>c. The locating, spacing, drilling, equipping, operating, or producing of any oil or gas well or wells in a manner which causes, or tends to cause, reduction in the quantity of oil or gas ultimately recoverable from a pool under prudent and proper operations, or which causes or tends to cause unnecessary or excessive surface loss or destruction of oil or gas.

N.D.C.C.§ 38-08-02(19).

[¶ 21] Issuing a temporary restraining order furthers the public interest in preventing waste. The order ensures that productive wells are not plugged or otherwise damaged. In addition, it will further the public interest in efficient development by not wrongfully transferring working interest, so that Plaintiffs may develop the premises.

## II. Plaintiffs have a clear need for immediate relief.

[¶ 22] Plaintiffs have a clear need for immediate relief with a temporary restraining order. N.D.R.Civ.P. 65(a)(3)(B). If the Court does not issue a temporary restraining order immediately, Defendants may unlawfully plug and otherwise damage the four oil and gas wells. Trigleth's threatening communications create an immediate and urgent risk that the wells will be damaged, causing waste that will irreparably harm Plaintiffs. Plaintiffs further have a clear need in preventing Trigleth and Bison from diluting the working interest when, at present Trigleth seeks to sell working interest. Plaintiffs satisfy the second Rule 65 element for a temporary restraining order.

## III. Plaintiffs have provided Defendants reasonable notice of Plaintiffs' motion for a temporary restraining order.

[¶ 23] Plaintiffs also satisfy the third and final element as to notice. This element requires that "the moving party gave reasonable notice or made reasonable efforts to give reasonable notice to the opposing party's attorney, if known, or if not known, to the opposing party[.]" N.D.R.Civ.P. 65(a)(3)(C)(i). "Reasonable notice means any form of notice reasonably calculated

8

to give actual notice of the date and time of submission of the motion to the court, affording the opposing party an opportunity to be heard." N.D.R.Civ.P. 65(a)(2).

[¶ 24] Plaintiffs provided to Defendants a copy of their motion for a temporary restraining order. Plaintiffs e-mailed the motion to Trigleth at the e-mail address used for prior communications between Plaintiffs' counsel and Trigleth. Plaintiffs are also mailed their motion to an address Trigleth previously received and signed for correspondence. Plaintiffs gave Defendants actual notice of the date and time Plaintiffs submitted their motion to the court, as well as an opportunity to be heard. Plaintiffs have satisfied the requirement of reasonable notice in Rule 65(a)(3)(C)(i).

## ORDER

[¶ 25] **ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiffs' Motion for Temporary Restraining Order (Doc. ID# 2) is **GRANTED**, and Defendants are temporarily enjoined and restrained from:

    a. Plugging or taking any steps in furtherance of plugging or otherwise causing harm to any of the Four Wells;

    b. transferring, diluting, or otherwise affecting the nature and quantum of Bison's interest in any of the Four Wells or underlying leases;

    c. transferring, diluting, or otherwise affecting the nature or quantum of any of Bison's oil, gas, or mineral interests in North Dakota;

    d. taking any actions towards the three TOP wells outside of normal production activities in the ordinary course of business; and

    e. undertaking any work or actions, including completions operations, unless and until Pollard and Goh are provided information as to the

      proposed work, an accounting, and be permitted to be present and consent to the actions performed.

2. Plaintiffs shall request a "preliminary injunction hearing time no less than 21 days, and no more than 28 days, from the temporary restraining order date." N.D.R.Civ.P. 65(a)(4).

3. This order shall terminate at the end of the 28th day after issuance unless the provisions of N.D.R.Civ.P. 65(a)(5), (7) are satisfied.

4. Plaintiffs shall serve this order in accordance with N.D.R.Civ.P. 65(a)(6).

Dated this 6th day of March, 2023.

*[signature]*

Michael P. Hurly
District Court Judge