Exhibit "6"

STATE OF NORTH DAKOTA                          IN DISTRICT COURT

COUNTY OF RENVILLE                  NORTHEAST JUDICIAL DISTRICT

| | |
|---|---|
| Greg Pollard, Kiat Tze "Kenny" Goh, and Sparrow Oil & Gas LLC, <br><br> Plaintiffs, <br><br> v. <br><br> Geary Trigleth, Bison Land & Minerals LLC, and EnTec Services, LLC, <br><br> Defendants. | Case No. 38-2023-CV-00007 <br><br> **NOTICE OF PLAINTIFFS' MOTION FOR CONTEMPT SANCTIONS** |

TO:     THE COURT AND DEFENDANTS

[¶ 1]     PLEASE TAKE NOTICE that, pursuant to Rule 65(i) of the North Dakota Rules of Civil Procedure, Chapter 27-10 of the North Dakota Century Code, and other applicable North Dakota law, Plaintiffs Greg Pollard, Kiat Tze "Kenny" Goh, and Sparrow Oil & Gas LLC have filed a motion for contempt sanctions. The motion is filed pursuant to Rule 3.2. of the North Dakota Rules of Court, which provides for fourteen days for Defendants to file and serve any response brief and other supporting papers.

Dated this 6th day of April, 2023.

FREDRIKSON & BYRON, P.A.

By: */s/ Spencer D. Ptacek*
    Lawrence Bender (#03908)
    Spencer D. Ptacek (#08295)
    Alexander T. Tsomaya (#07978)
    1133 College Drive, Suite 1000
    Bismarck, ND 58501-1215
    (701) 221-8700
    lbender@fredlaw.com
    sptacek@fredlaw.com
    atsomaya@fredlaw.com

*Attorneys for Plaintiffs Greg Pollard, Kiat Tze "Kenny" Goh, and Sparrow Oil & Gas LLC*

78816809 v1

STATE OF NORTH DAKOTA                          IN DISTRICT COURT

COUNTY OF RENVILLE                    NORTHEAST JUDICIAL DISTRICT

| | |
|---|---|
| Greg Pollard, Kiat Tze "Kenny" Goh, and Sparrow Oil & Gas LLC,<br><br>Plaintiffs,<br><br>v.<br><br>Geary Trigleth, Bison Land & Minerals LLC, and EnTec Services, LLC,<br><br>Defendants. | Case No. 38-2023-CV-00007<br><br><br>**PLAINTIFFS' MOTION FOR CONTEMPT SANCTIONS** |

[¶ 1]    Pursuant to N.D.R.Civ.P. 65(i) and N.D.C.C. ch. 27-10, Plaintiffs Greg Pollard, Kiat Tze Goh, and Sparrow Oil & Gas LLC respectfully move the Court to issue remedial sanctions for Defendants' contempt. More specifically, Plaintiffs have learned that Defendants Geary Trigleth and Bison Land & Minerals LLC have violated the Court's temporary restraining order and may be intending to violate the currently in place preliminary injunction. As a result, Plaintiffs are entitled to remedial sanctions under N.D.C.C. ch. 27-10. This motion is supported by the accompanying brief in support, and declaration.

Dated this 6th day of April, 2023.

FREDRIKSON & BYRON, P.A.

By: */s/ Spencer D. Ptacek*
 Lawrence Bender (#03908)
 Spencer D. Ptacek (#08295)
 Alexander T. Tsomaya (#07978)
 1133 College Drive, Suite 1000
 Bismarck, ND 58501-1215
 (701) 221-8700
 lbender@fredlaw.com
 sptacek@fredlaw.com
 atsomaya@fredlaw.com

 *Attorneys for Plaintiffs Greg Pollard, Kiat Tze*
 *"Kenny" Goh, and Sparrow Oil & Gas LLC*

78817233 v1

| | |
|---|---|
| STATE OF NORTH DAKOTA | IN DISTRICT COURT |
| COUNTY OF RENVILLE | NORTHEAST JUDICIAL DISTRICT |

| | |
|---|---|
| Greg Pollard, Kiat Tze "Kenny" Goh, and Sparrow Oil & Gas LLC, <br><br> Plaintiffs, <br><br> v. <br><br> Geary Trigleth, Bison Land & Minerals LLC, and EnTec Services, LLC, <br><br> Defendants. | Case No. 38-2023-CV-00007 <br><br> **BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR CONTEMPT SANCTIONS** |

## <u>INTRODUCTION</u>

[¶ 1]    In both its temporary restraining order and preliminary injunction covering the four oil and gas wells[1] at issue in this dispute, the Court unambiguously declared that Defendants are "enjoined and restraining from . . . undertaking any work or actions, including completions operations, unless and until" Defendants meet certain criteria. The term "any work" is, of course, broad. Despite this directive, Plaintiffs recently discovered that Defendants Geary Trigleth and Bison Land & Minerals LLC ("Bison")[2] have willfully violated this Court's temporary restraining order by undertaking operations on the West Dry Creek well. To make matters worse, Plaintiffs also recently learned that Trigleth intends to add violations in the near future with additional operations at the West Dry Creek well. This would violate the preliminary injunction.

---

[1]  Bison is currently the operator of record for the following four oil and gas wells in Renville County: (1) West Dry Creek 1H ("West Dry Creek") (NDIC No. 39417); (2) RUSCH 1 (NDIC No. 13826); (3) RUSCH 2 (NDIC No. 14424); and (4) FRANK W. MCCRORY 1 (NDIC No. 3284) (the parties refer to the latter three wells as the "TOP wells"). The West Dry Creek well and three TOP wells are collectively referred to as the "Four Wells". The Four Wells are a centerpiece of this litigation, with the recently drilled West Dry Creek well being the primary source of the dispute.

[2]  In the context of this motion, Bison can only act through Trigleth. And it is Trigleth that has violated the temporary restraining order. As such, this brief refers to Trigleth as the violating party although Bison is jointly liable with him to Plaintiffs.

[¶ 2]    Pursuant to N.D.C.C. ch. 27-10 and North Dakota law, Plaintiffs request the Court find Trigleth and Bison in contempt and order remedial sanctions. Trigleth and Bison should be jointly liable and subject to the following consequences:

**1.**    Trigleth should be ordered to compensate Plaintiffs for all attorney fees and costs Plaintiffs incurred in this action, and required to make this payment within ten days of receiving the Court's order;

**2.**    Trigleth and Bison should be required to provide Plaintiffs an accounting of Bison for the last year, dating to April 1, 2022, including but not limited to providing Plaintiffs all bank statements, payments sent or received, pay stubs, physical accounting records, electronic accounting records, invoices, field tickets, and any other accounting information relevant to Bison, within ten days of receiving the Court's order;

**3.**    Trigleth and Bison should be required provide Plaintiffs all documents and communications with vendors, working interest owners, and other third parties relating to the Four Wells, including all documents and communications mentioning or discussing: (a) completion operations for the West Dry Creek well, or (b) the transfer of any of Bison's interest in the Four Wells or underlying leases, and again provided within ten days of receiving the Court's order.

**4.**    in the event items 1–3 are not satisfied within ten days, the Court should impose a $2,000 daily statutory forfeiture onto Trigleth, from the date Trigleth was personally served, for each and every day that he does not cooperate with consequences 1–3; and

**5.**    in the event of noncompliance with the Court's order, the Court should order the remedial sanction of confinement.

All five consequences are directly linked to Trigleth's intentional conduct.

## **BACKGROUND**

[¶ 3]    This Court previously granted Plaintiffs Greg Pollard, Kiat Tze "Kenny" Goh and Sparrow Oil & Gas LLC a temporary restraining order enjoining Defendants from undertaking certain activities with respect to four oil and gas wells in Renville County. *See* TRO Or. (Doc. ID# 34). The well central to this matter is the West Dry Creek well. *See id.* This well was

drilled in late 2022 and early 2023 but has yet to be completed.[3] *See* Preliminary Injunction Or. (Doc. ID# 48).

[¶ 4]   The temporary restraining order was entered on March 6, 2023, and was in effect for 28 days. In the temporary restraining order, the Court specified conduct that Defendants were enjoined from undertaking. *See* TRO Or. at ¶ 25. As relevant to the present motion, the order provided that "Defendants are temporarily enjoined and restraining from . . . undertaking any work or actions, including completions operations, unless and until Pollard and Goh are provided information as to the proposed work, an accounting, and be permitted to be present and consent to the actions performed." *Id.* Defendants have not followed any of these prerequisites to perform work at the oil and gas wells this case concerns.

[¶ 5]   To ensure that Defendants do not irreparably harm the wells and mineral interests at issue, Plaintiffs also moved for a preliminary injunction. Defendants were all served with the temporary restraining order, preliminary injunction, briefing, and notice of hearing. *See* Doc. ID Nos. 35 (service on Bison), 36 (service on EnTech), and 46 (service on Trigleth). Trigleth has also confirmed his receipt of the materials by e-mailing Plaintiffs' counsel at various times.

[¶ 6]   On March 30, 2023, before the temporary restraining order terminated, the Court held the preliminary injunction hearing. Despite having notice of the hearing and being served with the same, Defendants chose not to attend. Pollard attended on behalf of Plaintiffs, along with counsel. At the conclusion of the hearing, the Court indicated that it would grant Plaintiffs' motion

---

[3]  "Completion" is "[a] generic term used to describe the assembly of downhole tubulars and equipment required to enable safe and efficient production from an oil or gas well. The point at which the completion process begins may depend on the type and design of well. However, there are many options applied or actions performed during the construction phase of a well that have significant impact on the productivity of the well." Completion, *Schlumberger Energy Glossary* (https://glossary.slb.com/en/terms/c/completion).

for a preliminary injunction in light of the record before it.

[¶ 7]    That very same day, after the preliminary injunction hearing concluded, Pollard and counsel drove by the West Dry Creek well. Much to their surprise, Geary Trigleth had hired third-party contractors that were at the location and completing work. *See* Pollard Decl. Pollard discerned from conversations that Trigleth is in the process of moving necessary equipment so he could begin completions operations. *See id.* Trigleth did not, however, follow any of the provisions of the temporary restraining order to commence any of this work. *Id.* Specifically, Trigleth failed to provide Plaintiffs any notice or information regarding the work, failed to provide the required accounting information, and failed to obtain Plaintiffs' consent before proceeding with the work. Plaintiffs also learned the same day that Trigleth is moving a workover rig to North Dakota so that he can perform completions operations on the West Dry Creek well. *Id.* In a nutshell, Trigleth has organized and proceeded with a variety of operations on the West Dry Creek well in spite of the Court's temporary restraining order. *See generally id.*

[¶ 8]    On April 4, 2023, the Court granted Plaintiffs' motion for a preliminary injunction. That order granted Plaintiffs the same relief as the temporary restraining order pending trial on the merits. *See* Preliminary Injunction Or., at ¶ 33. Once again, the Court ordered that "Defendants are hereby enjoined and restrained from . . . undertaking any work or actions, including completions operations, unless and until Pollard ang Goh are provided information as to the proposed work, an accounting, and are permitted to be present and consent to the actions performed." *Id.*

## ARGUMENT

[¶ 9]    Trigleth has willfully defied the Court's temporary restraining order by working on West Dry Creek well without satisfying the conditions in the temporary restraining order, and any current or future work will violate the preliminary injunction currently now in effect. Trigleth's

conduct should have consequences. To be sure, "[d]efiance of a court order with impunity should not be tolerated." *Mid-Dakota Clinic, P.C. v. Kolsrud*, 1999 ND 244, ¶ 24, 603 N.W.2d 475. Trigleth's violations are both willful and inexcusable.

[¶ 10]   The North Dakota Rules of Civil Procedure are unmistakably clear: "The court may punish disobedience of a temporary restraining order, preliminary injunction, or permanent injunction as a contempt." N.D.R.Civ.P. 65(i). "Contempt includes 'intentional disobediance, resistance, or obstruction of the authority, process, or order of a court or other officer, including a referee or magistrate.'" *Kettle Butte Trucking LLC v. Kelly*, 2018 ND 110, ¶ 12, 910 N.W.2d 882 (quoting N.D.C.C. § 27-10-01.1(1)(c)) (cleaned up). A district court "exercises broad discretion in determining whether to hold an individual in contempt," and the North Dakota Supreme "[C]ourt will not overturn a finding of contempt unless there is a clear abuse of that discretion." *Kolsrud*, 1999 ND 244, ¶ 21; *see also, e.g.*, *City of Grand Forks v. Dohman*, 552 N.W.2d 69, 70 (N.D. 1996) (similar).

[¶ 11]   Contempt sanctions are designed to compensate the harmed party while also "protecting the authority and dignity of the court." *State v. Bouck*, 2001 ND 153, ¶ 5, 633 N.W.2d 163. To those ends, a district court may impose both remedial and punitive sanctions for contempt. *See* N.D.C.C. § 27-10-01.2; *see also Kolsrud*, at ¶ 20 ("Chapter 27-10 allows a court to impose both remedial and punitive sanctions, which incorporate the traditional characteristics of civil and criminal contempt."). Remedial sanctions for Trigleth's contempt are appropriate in this case.[4]

[¶ 12]   "Remedial sanctions can be payment of money, forfeitures, or imprisonment." *Endersbe v. Endersbe*, 555 N.W.2d 580, 582 (N.D. 1996); *see also* N.D.C.C. § 27-10-01.1.4 (describing remedial sanctions). North Dakota law outlines the following procedure when remedial

---

[4]  Chapter 27-10, N.D.C.C., provides the Court with power to appoint a prosecutor to seek punitive sanctions, which the Court may find applicable. Plaintiffs leave that decision to the Court's wisdom.

sanctions are sought.

> 1.a. The court on its own motion or motion of a person aggrieved by contempt of court may seek imposition of a remedial sanction for the contempt by filing a motion for that purpose in the proceeding to which the contempt is related. The court, after notice and hearing, may impose a remedial sanction authorized by this chapter. . . .

N.D.C.C. § 27-10-01.3(1)(a). The notice requirement in section 27-10-01.3 tracks the standard

notice requirements for a motion *See Peterson v. Schulz*, 2017 ND 155, ¶ 14, 896 N.W.2d 916

("Section 27-10-01.3, N.D.C.C., requires notice and hearing before a remedial sanction can be

imposed . . . [which] is equivalent to a notice of motion and provides notice of the contempt

proceedings."). In cases such as this one—where the contempt does not occur in the presence of

the district court—the court may also order Trigleth to show cause or issue a warrant of attachment

to compel his presence:

> In addition to the procedure set out in section 27-10-01.3, when an act punishable as contempt is not committed in the immediate view and presence of the court, the court, upon being satisfied of the commission of the offense, may:
>
>> 1. Order the accused to show cause at a specified time and place why the accused should not be punished for the alleged offense; or
>
>> 2. Issue a warrant of attachment directed to the sheriff of any county where the accused may be found commanding the sheriff to arrest and bring the accused before the court at a specified time and place to answer for the alleged offense.

N.D.C.C. § 27-10-07. Given Trigleth's lack of attendance and responsiveness in this and related

cases, subsection (2) may be necessary to compel Trigleth's presence at a hearing on this motion

or future hearings, should the Court desire it.[5] "An order to show cause issued pursuant to section

27-10-07 may be made in the action or proceeding in or respecting which the offense was

committed, either before or after the final judgment or order therein, and is equivalent to a notice

---

[5] Trigleth is also a named defendant in two cases brought by Hunter Drilling, Inc. *See* 05-2023-CV-00019, and 05-2023-CV-00020. He did not appear for the preliminary injunction hearing in that matter either.

of motion." N.D.C.C. § 27-10-08.

[¶ 13]  This procedure in mind, N.D.C.C. ch. 27-10 enumerates substantive, remedial sanctions available. District courts are authorized to issue the following:

1. A court may impose one or more of the following remedial sanctions:

a. Payment of a sum of money sufficient to compensate a party or complainant, other than the court, for a loss or injury suffered as a result of the contempt, including an amount to reimburse the party for costs and expenses incurred as a result of the contempt;

b. Imprisonment if the contempt of court is of a type included in subdivision b, c, d, e, or f of subsection 1 of section 27-10-01.1. The imprisonment may extend for as long as the contemnor continues the contempt or six months, whichever is shorter;

c. A forfeiture not to exceed two thousand dollars for each day the contempt continues;

d. An order designed to ensure compliance with a previous order of the court; or

e. A sanction other than the sanctions specified in subdivisions a through d if the court expressly finds that those sanctions would be ineffectual to terminate a continuing contempt.

\* \* \* \*

N.D.C.C. § 27-10-01.4(1)[6]. Furthermore, "[i]n addition to statutory powers of contempt granted to the courts of this State [by N.D.C.C. ch. 27-10] . . . the courts have historically retained an 'inherent' power to punish for contempt." *State v. Stokes*, 243 N.W.2d 372, 374 (N.D. 1976).

[¶ 14]  Here, Trigleth deliberately violated the Court's temporary restraining order and likely is or will be violating the preliminary injunction if his conduct is left unchecked. Plaintiffs are entitled to several remedial sanctions because of Trigleth's contempt. As the Court can review from Plaintiffs' previously filed brief in support of motion for restraining order and motion for preliminary injunction, Trigleth's behavior throughout the events leading to this action have

---

[6]  Section 27-10-01.4 also identifies other available sanction and the power for courts to impose punitive sanctions.

flagrantly disregarded Plaintiffs and their rights. *See also* Preliminary Injunction Or. Trigleth forced Plaintiffs to request the court grant injunctive relief—following his profanity-laced threats both on a personal and business level—to maintain the status quo and avoid irreparable harm. Now that the Court has granted Plaintiffs that relief, Trigleth has simply cast the Court's orders aside. His behavior cannot and should not be tolerated. Each remedial sanction is addressed in turn below.

## I.   The Court should award Plaintiffs their fees and costs incurred to date.

[¶ 15]  The Court should order Trigleth to compensate Plaintiffs for the entirety of their attorney fees and costs incurred in this action. "Under N.D.R.Civ.P. 65(i), a district court may punish disobedience of a [temporary restraining order and a] preliminary injunction as a contempt. Moreover, a district court may impose a monetary sanction for a loss or injury suffered as a result of contempt, including an amount to reimburse the party for costs and expenses incurred as a result of the contempt." *Sauter v. Miller*, 2018 ND 57, ¶ 31, 907 N.W.2d 370 (citing N.D.C.C. § 27-10-01.4). When exercising this power, "[t]he district court 'has considerable discretion in awarding costs and attorney fees, and its decision will not be overturned on appeal absent an abuse of discretion.'" *Sauter*, at ¶ 31 (quoting *Giese v. Giese*, 2002 ND 194, ¶ 11, 653 N.W.2d 663).

[¶ 16]  The North Dakota Supreme Court affirmed such an award in *Sauter*. That case involved a property dispute. The district court issued a Rule 65 injunction order providing that the parties could "not further improve, change, or otherwise alter the property[.]" *Sauter*, at ¶ 29. But "the Millers removed the fence on the east side of the [d]isputed [p]roperty, installed solar panels, and installed a fence around the water tank which included cemented-in posts." *Id.* at ¶ 30. In light of this "improper behavior," the North Dakota Supreme Court found that an award of attorney fees and costs was appropriate, and the district court did not abuse its discretion. *See id.* at ¶¶ 31–33. *Sauter* tracks North Dakota precedent. *See also, e.g.*, *Giese*, 2004 ND 58, ¶ 12 ("The court, in its discretion, may award attorney fees as part of the compensation to the complainant in contempt

proceedings as reimbursement for costs and expenses incurred as a result of the contempt."); *Lauer v. Lauer*, 2000 ND 82, ¶ 11, 609 N.W.2d 450 (similar).

[¶ 17]   The same is true here. Plaintiffs have incurred attorney fees and costs in following North Dakota procedure to secure a temporary restraining order and preliminary injunction. Defendants were served and had notice of the process along the way. *See* Doc. ID# Nos. 35 (service on Bison), 36 (service on EnTech), and 46 (service on Trigleth). It was critical to halt work at the West Dry Creek well so the status quo could be preserved while litigation resolves issues between the parties. Defendants have disregarded the legal process, however, and ignored judicial directive at the expense of Plaintiffs. The Court should award Plaintiffs the entirety of their attorney fees and costs incurred in this action as a remedial sanction under N.D.R.Civ.P. 65(i) and N.D.C.C. § 27-10-01.4.

## II.    The Court should order Defendants to provide Plaintiffs with a full accounting of Bison for the previous year.

[¶ 18]   Pollard and Goh are members of Bison but have been precluded from obtaining accounting information of the company by its managing member, Trigleth.[7] The Court should order Defendants to provide Plaintiffs a full accounting of Bison for the previous year, from April 1, 2022, to the present. Defendants should additionally be required to provide this information within ten days of the Court's order. Section 27-10-01.4(e), N.D.C.C., provides the Court with two options in awarding this remedial sanction:

> * * * *
>
> d. An order designed to ensure compliance with a previous order of the court; or
>
> e. A sanction other than the sanctions specified in subdivisions a through d if the court expressly finds that those sanctions would be ineffectual to terminate a continuing contempt.
> * * * *

---

[7]   As the Court may recall from prior briefing, Trigleth refused to provide Pollard and Goh an accounting of the approximately $1.4 million in investor funds. *See, e.g.*, Doc. ID# 41, at ¶¶ 12–14.

N.D.C.C. § 27-10-01.4(1).

[¶ 19]  Subsections (d) and (e) work together to grant this relief. The Court's temporary restraining order provided that "Defendants are temporarily enjoined and restrained from . . . undertaking any work or actions, including completions operations, *unless and until* Pollard and Goh are provided *information* as to the proposed work, *an accounting*, and be permitted *to be present and consent* to the actions performed." TRO Or., at ¶ 25 (emphasis added). The preliminary injunction mirrors that language. *See* Preliminary Injunction Or., at ¶ 33. With their work organized in secret, Defendants have not only violated Plaintiffs' right to be at the West Dry Creek well and consent to the operations conducted, but they have also precluded Pollard and Goh from receiving any accounting information with respect to Bison. This is true even though Pollard and Goh are members of Bison.

[¶ 20]  It is undeniable that Pollard and Goh are entitled to an accounting under substantive law. Pollard and Goh are entitled to information regarding Bison's activities and accounting records by statute. *See* Del. Code Ann. tit. 6, § 18-305; N.D.C.C. § 10-32.1-42.[8] Pollard and Goh are independently entitled to an equitable accounting given the parties' relationship and Trigleth's control over the relevant documents and information. *See Ritter, Laber & Assocs. v. Koch Oil, Inc.*, 2004 ND 117, ¶ 31, 680 N.W.2d 634 ("Equitable jurisdiction for an accounting may be invoked when (1) there is a fiduciary relationship between the parties, accompanied by a duty on

---

[8] As Plaintiffs have previously explained, section 18-305 provides exclusive jurisdiction to Delaware courts. Because Delaware's statute does not apply, North Dakota's LLC inspection statute may therefore govern despite the fact Bison was formed in Delaware. *See Havlicek v. Coast-to-Coast Analytical Services, Inc.*, 46 Cal. Rptr. 2d 696, 697 (Cal. App. 2d Dist. 1995) (California statute permitting inspection applied in case involving Delaware corporation); *Sachs v. Adeli*, 26 A.D.3d 52, 58 (N.Y. App. Div. 2005) (New York law applied with respect to inspecting a Delaware LLC's records, notwithstanding Del. Code Ann. tit. 6, § 18-305). Section 10-32.1-42, N.D.C.C., therefore permits Pollard ang Goh to seek an accounting.

the part of the defendant to render an account, (2) there are mutual accounts, or, if the account is all on one side, the account is complicated, and (3) there is a need for discovery.").

[¶ 21]  As a remedial sanction, the Court should order an accounting. An order requiring the accounting provides Plaintiffs the same information that they were entitled to receive if Defendants had complied with the temporary restraining order before commencing additional work. Such an order would permit Pollard and Goh to understand the work that has been completed and help ensure future compliance. The order would allow Pollard and Goh to see how monetary funds have been used, especially when considering Trigleth had sole control over $1.4 million of investor funds. The Court should order that, within ten days, Trigleth provide Pollard and Goh a full accounting of Bison from April 1, 2022, to the present. The accounting should include, at minimum, Bison's full bank statements, electronic accounting records, invoices, field tickets, and any other information reflecting work performed, funds used, or funds received.

### III.    The Court should order Plaintiffs to provide Defendants with all communications with third parties regarding Bison's mineral interests.

[¶ 22]  For similar reasons, under N.D.C.C. § 27-10-01.4(d)–(e), the Court should order that Defendants produce all documents and communications with vendors, working interest owners, and other third parties relating to the Four Wells within ten days of the Court's order. This production should include all documents and communications mentioning or discussing: (a) completion operations for the West Dry Creek well, or (b) the transfer of any of Bison's interest in the Four Wells or underlying leases. The temporary restraining order prevented Defendants from:

> b.  transferring, diluting, or otherwise affecting the nature and quantum of Bison's interest in any of the Four Wells or underlying leases; [or]
>
> c.  transferring, diluting, or otherwise affecting the nature or quantum of any

of Bison's oil, gas, or mineral interests in North Dakota[.]

TRO Or., at ¶ 25. The preliminary injunction includes similar provisions. *See* Preliminary Injunction Or., at ¶ 33.

[¶ 23]  Again, the temporary restraining order required Trigleth to provide information regarding proposed work *before* commencing it. Because Trigleth proceeded with work without complying with the order, he should be ordered to provide such information now.

[¶ 24]  Moreover, considering Trigleth's violation of the prohibition on undertaking operations at the West Dry Creek well location, Plaintiffs are concerned that Trigleth is violating the provisions prohibiting the transferring of Bison's interest as well. And concerns aside, Trigleth previously did in fact attempt to wrongfully sell and otherwise dilute working mineral interest in the West Dry Creek well. *See* 2/9/23 E-mail (Doc. ID# 23). He has made threats via e-mail on the same topic to counsel. The Court should therefore order production of these documents and communications within ten days of the Court's order. Plaintiffs have no other way to ensure compliance.

## IV.   The Court should impose a $2,000 daily sanction on Trigleth in the event of noncompliance with this order and the preliminary injunction.

[¶ 25]  If Trigleth does not satisfy items 1–3 within ten days of the Court's order resolving this motion and does not abide by the preliminary injunction, the Court should impose a daily statutory forfeiture sanction onto Trigleth from the date Trigleth was served and for each and every day that Trigleth does not cooperate and comply.[9] The daily sanction should continue for each day that Trigleth does not comply with the preliminary injunction and the Court's order on this motion.

---

[9] While Defendants' initial contempt began with violating the temporary restraining order, Plaintiffs moved for a preliminary injunction essentially extending the temporary restraining order. The Court indicated it would grant that motion. Thus, if Defendants continue their actions, they will be violations will run afoul the preliminary injunction after the temporary restraining order expired.

[¶ 26]  Section 27-10-01.4(1)(c), N.D.C.C., provides that the Court may order "[a] forfeiture not to exceed two thousand dollars for each day the contempt continues." The North Dakota Supreme Court has held that "daily sanctions were remedial in nature because they were coercive" when applying subsection (1)(c). *Invs. Title Ins. Co. v. Herzig*, 2013 ND 13, ¶ 13, 826 N.W.2d 310 (*Herzig II*). This is because a forfeiture accrues only so long as the contempt continues:

> Under N.D.C.C. § 27-10-01.4(1), remedial sanctions may be imposed for contempt, including money damages to compensate a party or complainant *other than the court*, imprisonment, and forfeitures not to exceed $2,000 for each day the contempt continues, in addition to sanctions other than those specified "if the court expressly finds that those sanctions would be ineffectual to terminate a continuing contempt." One commentator has discussed within the context of our contempt statutes how remedial forfeiture differs from a fine and from money damages: "A forfeiture is unlike a fine, which is punitive in nature, because it is conditional and only accrues so long as the contempt continues. Moreover, unlike money damages, a forfeiture is paid to the court rather than to an aggrieved party." Wayne R. Johnson, *North Dakota's New Contempt Law: Will It Mean Order in the Court?*, 70 N.D. L. Rev. 1027, 1049–50 (1994) (citing Testimony of Gerhard Raedeke, Staff Attorney, Joint Procedure Committee, on H.B. 1077, § IV, 13 (Jan. 11, 1993); Robert J. Martineau, *Contempt of Court: Eliminating the Confusion Between Civil and Criminal Contempt*, 50 U. Cin. L. Rev. 677, 703 (1981) (discussing forfeiture)).

*Invs. Title Ins. Co. v. Herzig*, 2010 ND 138, ¶ 47, 785 N.W.2d 863 (*Herzig I*) (emphasis in original).

[¶ 27]  Likewise, here, a daily forfeiture sanction in the amount of $2,000 would be appropriate and remedial under N.D.C.C. § 27-10-01.4(1)(c) if Trigleth continues his contempt. The sanction would encourage Defendants' compliance with the Court's orders, which in turn would maintain the status quo to the extent still possible. If noncompliance persists, the daily sanction should be effective beginning on the date that Trigleth was personally served with the temporary restraining order and related documents—which was on March 21, 2023.[10]

---

[10] As the Court will recall, Trigleth had actual notice of the temporary restraining order and this matter before personal service. Both Bison and EnTech were served on March 13, 2023, and Trigleth received those documents as the managing member for each company. Further, the undersigned counsel provided Trigleth with copies Plaintiffs' motion for temporary restraining order at the outset.

Section 27-10-01.4(c)(1) exists for this very scenario.

## V.   The Court has the power to confine Trigleth in the event of noncompliance.

[¶ 28]   Plaintiffs are hopeful that Trigleth will follow the Court's orders. But when viewing his actions to date, there is significant doubt this will occur. If Trigleth insists on continuously violating North Dakota law, the Court has another remedial sanction it may exercise. This sanction has teeth—the Court may order "[i]mprisonment if the contempt of court is of a type included in subdivision b, c, d, e, or f of subsection 1 of section 27-10-01.1. The imprisonment may extend for as long as the contemnor continues the contempt or six months, whichever is shorter[.]" N.D.C.C. § 27-10-01.4(1)(b).

[¶ 29]   The North Dakota Supreme Court has explained such a sanction is a remedial sanction. For instance, in *Orwig v. Orwig*, "Mary Orwig willfully and intentionally disobeyed [a] judgment when she refused to even discuss an exchange of the property items awarded under the divorce judgment." 2022 ND 29, ¶ 14, 970 N.W.2d 179. The district court previously ordered that, in the event of noncompliance, "she shall serve 60 days in jail[.]" *Id.* at ¶ 17. The North Dakota Supreme Court held this was a remedial, rather than punitive, sanction. *Id.* at ¶¶ 16–20. *See also Nygaard v. Taylor*, 2017 ND 206, ¶ 17, 900 N.W.2d 833 ("Courts have the inherent power to confine a contemnor indefinitely until he complies with an affirmative command that he has the ability to perform, because the contemnor is able to purge the contempt and obtain his release by committing an affirmative act, and thus carries the keys of his prison in his own pocket." (cleaned up)).

[¶ 30]   Here as well, the Court should consider confinement if Trigleth fails to comply with the preliminary injunction and order on this motion. Trigleth would be able to purge the contempt and obtain his release by committing the affirmative act of following the Court's orders.

## CONCLUSION

[¶ 31] Defendants, and specifically Trigleth, have intentionally violated the Court's temporary restraining order and may be violating the preliminary injunction. This contempt is subject to remedial sanctions under N.D.R.Civ.P. 65(i) and N.D.C.C. ch. 27-10. The Court may (1) issue an order for Trigleth to show cause or (2) issue a warrant of attachment directed to the sheriff of any county where Trigleth may be found so he can be arrested and brought before the Court. *See* N.D.C.C. § 27-10-07. The Court should then order the remedial sanctions set forth above pursuant to N.D.C.C. ch. 27-10. Plaintiffs are entitled to the remedial sanctions set forth above as a result of Trigleth's contempt.

Dated this 6th day of April, 2023.

FREDRIKSON & BYRON, P.A.

By:  */s/ Spencer D. Ptacek*
  Lawrence Bender (#03908)
  Spencer D. Ptacek (#08295)
  Alexander T. Tsomaya (#07978)
  1133 College Drive, Suite 1000
  Bismarck, ND 58501-1215
  (701) 221-8700
  lbender@fredlaw.com
  sptacek@fredlaw.com
  atsomaya@fredlaw.com

  *Attorneys for Plaintiffs Greg Pollard, Kiat Tze*
  *"Kenny" Goh, and Sparrow Oil & Gas LLC*

78812845 v1

STATE OF NORTH DAKOTA             IN DISTRICT COURT

COUNTY OF RENVILLE          NORTHEAST JUDICIAL DISTRICT

| | |
|---|---|
| Greg Pollard, Kiat Tze "Kenny" Goh, and Sparrow Oil & Gas LLC,<br><br>Plaintiffs,<br><br>v.<br><br>Geary Trigleth, Bison Land & Minerals LLC, and EnTec Services, LLC,<br><br>Defendants. | Case No. 38-2023-CV-00007<br><br><br>**DECLARATION OF<br>GREG POLLARD** |

I, Greg Pollard, certify to the best of my knowledge that the statements set forth in this instrument are true and correct.

[¶ 1]    I am over eighteen years of age, am of sound mind and body, and under no legal disability. I have personal knowledge of the facts set forth in this declaration, and if called to testify in person about those facts, could and would do so completely and under oath.

[¶ 2]    I submit this declaration in support of Plaintiffs' motion addressing Defendants' violation of the Court's temporary restraining order.

[¶ 3]    On March 30, 2023, I traveled to Bottineau, North Dakota, for a hearing on Plaintiffs' preliminary injunction motion. Defendants chose not to attend the hearing in this case, or the similar hearing in a separate action that was scheduled for the same day.

[¶ 4]    I traveled to the hearing from Bismarck with one of Plaintiffs' attorneys of record, Alexander T. Tsomaya.

[¶ 5]    Once the hearing concluded, we drove towards the West Dry Creek 1H well ("West Dry Creek") (NDIC No. 39417). This well is central to this case. Plaintiffs are concerned that

Defendant Geary Trigleth may undertake work on the well despite the Court's order precluding him from doing so and despite Mr. Trigleth having received that order.

[¶ 6]    Upon nearing the West Dry Creek well, we observed a roustabout truck at the location. Work had been completed and was being performed. An individual in the truck informed us that he worked for "Dakota Roustabouts," which was hired to "work on the facility."

[¶ 7]    I took photographs of the location at this time. True and accurate copies of those photographs are attached as **Exhibit A**.

[¶ 8]    After leaving the facility, we drove past Charles Braun, who was traveling towards the West Dry Creek well. Mr. Braun was the hired pumper for the well prior to this case commencing and the Court's order halting work.

[¶ 9]    Mr. Braun called me on my cell phone moments thereafter. I spoke with Mr. Braun about work that Mr. Trigleth had caused to be performed and was planning to perform.

[¶ 10]   During this phone call, I was also informed that Mr. Trigleth is planning to commence completions operations.

[¶ 11]   Mr. Trigleth is planning to, or in the process of, moving a work over rig of Defendant EnTec Services, LLC, from Louisiana to North Dakota so that completions operations can take place on the West Dry Creek well. This is in addition to work already performed.

[¶ 12]   Mr. Trigleth never notified Mr. Goh or me about the work that had been completed or the work that was being planned. Nor did Mr. Goh or I consent to Mr. Trigleth performing work. Further, Mr. Goh and I have not been provided an accounting.

I declare, under penalty of perjury under the law of North Dakota, that the foregoing is true and correct.

Dated this 31st day of March, 2023.

_____
Greg Pollard

78769864 v1

STATE OF NORTH DAKOTA                    IN DISTRICT COURT

COUNTY OF RENVILLE                  NORTHEAST JUDICIAL DISTRICT

| | |
|---|---|
| Greg Pollard, Kiat Tze "Kenny" Goh, and Sparrow Oil & Gas LLC,<br><br>  Plaintiffs,<br><br>  v.<br><br>Geary Trigleth, Bison Land & Minerals LLC, and EnTec Services, LLC,<br><br>  Defendants. | Case No. 38-2023-CV-00007<br><br>**EXHIBIT A TO THE DECLARATION OF GREG POLLARD** |











STATE OF NORTH DAKOTA

IN DISTRICT COURT

COUNTY OF RENVILLE

NORTHEAST JUDICIAL DISTRICT

| | |
|---|---|
| Greg Pollard, Kiat Tze "Kenny" Goh, and Sparrow Oil & Gas LLC,<br><br>Plaintiffs,<br><br>v.<br><br>Geary Trigleth and Bison Land & Minerals LLC,<br><br>Defendant. | Case No. 38-2023-CV-00007<br><br><br>**CERTIFICATE OF SERVICE** |

I, the undersigned, hereby certify that a true and correct copy of the following documents:

     [¶ 1]   **Notice of Plaintiff's Motion for Contempt Sanctions;**

     [¶ 2]   **Plaintiff's Motion for Contempt Sanctions;**

     [¶ 3]   **Brief in Support of Plaintiff's Motion for Contempt Sanctions**;

     [¶ 4]   **Declaration of Greg Pollard**

     [¶ 5]   **Exhibit A to the Declaration of Greg Pollard**

were, on April 6, 2023, filed electronically through Odyssey, and a copy of the same mailed via

the United States Postal Service with postage prepaid to the following:

     Geary Trigleth
     Bison Land & Minerals, LLC
     EnTech Services, LLC
     240 Buckhead Drive
     Madison, MS 39110

DATED this 6th day of April, 2023.

FREDRIKSON & BYRON, P.A.

By: */s/ Spencer Ptacek*

Lawrence Bender, ND Bar #03908
Spencer D. Ptacek, ND Bar #08295
Alexander T. Tsomaya (#07978)
1133 College Drive, Suite 1000
Bismarck, ND 58501-1215
(701) 221-8700
lbender@fredlaw.com
sptacek@fredlaw.com
atsomaya@fredlaw.com

*Attorneys for Plaintiffs Greg Pollard, Kiat Tze*
*"Kenny" Goh, and Sparrow Oil & Gas LLC*

78824058 v1