**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**

| | | |
|---|---|---|
| IN RE: | BISON LAND & MINERALS, LLC | CHAPTER 11 |
| | Debtor | CASE NO. 23-01140-JAW |

## SUBCHAPTER V PLAN OF REORGANIZATION

**SUBMITTED BY:**

Craig M. Geno; MSB No. 4793
LAW OFFICES OF CRAIG M. GENO, PLLC
587 Highland Colony Parkway
Ridgeland, MS 39157
601-427-0048 - Telephone
601-427-0050 - Facsimile
cmgeno@cmgenolaw.com
N:\Firm Data\Users\Bankrupt\Bison Land & Minerals, LLC\SubV Plan\Revised SubV Plan 8-14-23.wpd

**TABLE OF CONTENTS**

ARTICLE I

    INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        A.    INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        B.    DEFINITIONS, CONSTRUCTION, AND INTERPRETATION . . . . 4

ARTICLE II

    GENERAL INFORMATION, BACKGROUND AND LIQUIDATION ANALYSIS
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        A.    DEBTOR'S STRUCTURE; ASSETS AND LIABILITIES . . . . . . . . . 7

        B.    BUSINESS HISTORY AND EVENTS PRECIPITATING CHAPTER 11 FILING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        C.    LITIGATION AND ADMINISTRATIVE PROCEEDINGS. . . . . . . . 8

        D.    PROCEEDINGS IN THE BANKRUPTCY COURT . . . . . . . . . . . . . . 8

ARTICLE III

    LIQUIDATION ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        A.    FEASIBILITY OF THE PLAN. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        B.    LIQUIDATION ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        C.    PLAN ALTERNATIVES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

ARTICLE IV

    CLASSIFICATION AND TREATMENT OF CLAIMS . . . . . . . . . . . . . . . . . . . . . . 10

        A.    CLASSIFICATION OF CLAIMS AND INTERESTS . . . . . . . . . . . . 10

        B.    TREATMENT OF CLAIMS AND INTERESTS . . . . . . . . . . . . . . . . 11

                CLASS 1:    ADMINISTRATIVE CLAIMS . . . . . . . . . . . . . . . . . . 11

                CLASS 2:    PRIORITY CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . 12

        CLASS 3:    GENERAL, UNSECURED CLAIMS . . . . . . . . . . . . . . . 12

        CLASS 4:    EQUITY INTEREST . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**ARTICLE V**

        EXECUTORY CONTRACTS AND UNEXPIRED LEASES . . . . . . . . . . . . . . . . . . 12

**ARTICLE VI**

        CLOSING DATE & EFFECTIVE DATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**ARTICLE VII**

        MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN. . . . . . . 13

**ARTICLE VIII**

        EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS . . . . . . . 13

**ARTICLE IX**

        DISCHARGE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**ARTICLE X**

        REVESTING OF PROPERTY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**ARTICLE XI**

        RETENTION OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**ARTICLE XII**

        DEFAULT UNDER THE PLAN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**ARTICLE XIII**

        CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:     **BISON LAND & MINERALS, LLC**     **CHAPTER 11**
    **Debtor**     **CASE NO. 23-01140-JAW**

# SUBCHAPTER V PLAN OF REORGANIZATION

## ARTICLE I
## INTRODUCTION

    **A.**     **INTRODUCTION**

Bison Land & Minerals, LLC (the "Debtor" or the "Debtor-in-Possession") filed a Voluntary Petition for reorganization pursuant to Chapter 11 of the United States Bankruptcy Code with the United States Bankruptcy Court for the Southern District of Mississippi on May 15, 2023 (the "Petition Date"). Robert A. Byrd has been appointed as Trustee.

    **B.**     **DEFINITIONS, CONSTRUCTION, AND INTERPRETATION**

All capitalized terms used in this Plan not defined herein, but which are defined in the Bankruptcy Code, shall have the respective meanings ascribed in the Bankruptcy Code. All capitalized terms used but not defined in this Plan or in the Bankruptcy Code shall have the respective meanings ascribed in the Bankruptcy Rules.

    1.     **"Allowed Claim"** means, as against the Debtor:

        (a)     A Claim that has been allowed by Final Order of the Bankruptcy Court, or

        (b)     A Claim (i) scheduled as liquidated, undisputed and non-contingent by the Debtor in its Schedules as they may be restated, amended or supplemented, or (ii) timely filed with the Clerk of the Bankruptcy Court against which either there has been no objection made to the allowance thereof within the period of time fixed by the Bankruptcy Code, the Bankruptcy Rules or a

Final Order of the Bankruptcy Court, or which has been allowed in whole or in part by a Final Order of the Bankruptcy Court after either an objection to the Claim or an amendment of the Schedules.

2. **"Allowed Secured Claim"** means the Allowed Claim of a Secured Creditor to the extent that it is secured by a lien on property in which the Debtor has an interest as provided in Sections 506(a) and (b) of the Bankruptcy Code.

3. **"Bankruptcy Code"** or **"Code"** means Title 11 of the United States Code, as amended and effective in the Southern District of Mississippi on the Petition Date and includes, where applicable, the Bankruptcy Rules then in effect.

4. **"Bankruptcy Court"** or **"Court"** means the United States Bankruptcy Court for the Southern District of Mississippi exercising jurisdiction over this Chapter 11 reorganization case and any and all proceedings therein.

5. **"Claim"** is defined in Bankruptcy Code Section 101(5).

6. **"Closing"** means the consummation of the transactions contemplated by the Plan.

7. **"Confirmation"** means the date the Court enters an order confirming this Plan.

8. **"Creditor"** is defined in Bankruptcy Code Section 101(10).

9. **"Debtor"** or **"Debtor-in-Possession"** means Bison Land & Minerals, LLC.

10. **"Effective Date of the Plan,"** or **"Effective Date,"** means sixty days after an order confirming the Plan of Reorganization entered in this Chapter 11 case becomes final and non-appealable.

11. **"Final Order"** means any order of the Court which is no longer subject to appeal or review.

12. **"Fully Secured Creditor"** means any Secured Creditor designated as such in the Plan whose Allowed Claim is less than the value of the collateral securing its Claim.

13. **"Partially Secured Creditor"** means any Secured Creditor designated as such in this Plan whose Allowed Claim is greater than the value of the collateral securing its Claim.

14. **"Petition Date"** means the date of the filing of the Debtor's Petition which was May 15, 2023.

15. **"Plan"** means a plan of reorganization filed by the Debtor and as it may be modified, reinstated and amended from time to time.

16. **"Pro-Rata"** means the same proportion that a Claim or an Allowed Claim in a particular class bears to the aggregate amount of all Claims or Allowed Claims in said class.

17. **"Reorganized Debtor" or "Debtor-in-Possession"** means the Debtor and this Chapter 11 case after Confirmation and Closing.

18. **"Schedules"** means the Statement of Financial Affairs and the Schedules of debts and assets filed by the Debtor with the Bankruptcy Court in this case, as amended, reinstated or supplemented from time to time.

19. **"Secured Claim"** means an Allowed Claim for which property of the Debtor or the Debtor's estate serves as security or collateral.

20. **"Secured Creditor"** means those Creditors which possess valid and perfected liens against any assets of the Debtor, including, but not limited to, fully Secured Creditors and Partially Secured Creditors.

21. **"Unsecured Claim"** means an Allowed Claim for which no property of the Debtor or the Debtor's estate serves as security or collateral.

22.     **"Unsecured Creditor"** means a person, corporation, partnership or other entity that holds an Unsecured Claim against the Debtor.

## ARTICLE II
## GENERAL INFORMATION, BACKGROUND AND LIQUIDATION ANALYSIS

### A.    DEBTOR'S STRUCTURE; ASSETS AND LIABILITIES

The Debtor's assets and liabilities are listed in its Schedules; relevant copies are attached, incorporated by reference and marked as **Exhibit "A"**. The Debtor owns Chapter 5 avoidance causes of action as well and it expressly reserves payments made in the ninety (90) days before filing, including Claims, to "clawback" those payments. Specifically, a number of open account Creditors attempted to file materialman's/construction/related liens within the ninety (90) days prior to the filing of the Petition in this case, thereby allegedly (or possibly) elevating themselves from general, open account Unsecured Creditors to Secured Creditors. Those efforts are preferential transfers and/or fraudulent conveyances, thereby rendering all efforts at those lien attempts in the ninety (90) days (for preferences) and the two (2) years (for fraudulent conveyances) voidable and of no effect. The Debtor also reserves all Claims and causes of action described in its Schedules, including, but not limited to, Claims against Greg Pollard and Kenny Goh for breach of contract, breach of fiduciary duty, negligence and waste. Debtor also reserves all affirmative defenses/counterclaims as to all of the litigation filed against it in North Dakota. Debtor (and EnTec Services, LLC ("EnTec")) also reserves all rights for the return of a rig, and resultant damages, wrongfully taken from the Debtor by Hunter Drilling Services, Inc. (and perhaps others). As a result, the Debtor has no Secured Creditors and it will pursue avoidance Claims and causes of action post-confirmation.

The equity security holders are contained in the *List of Equity Security Holders* **[DK #30]**, and a copy of that document is attached, incorporated by reference and marked as **Exhibit "B"**.

**B.  BUSINESS HISTORY AND EVENTS PRECIPITATING CHAPTER 11 FILING**

As was noted in the Debtor's *11 U.S.C. § 1188(c) Status Report* (the "Status Report") **[DK #47]**, and as will be noted here, the Debtor's pre-petition history is convoluted, complex, uncertain and now heavily contested (see, for example, the *Motion to Dismiss or, Alternatively, to Modify the Automatic Stay* **[DK #58]** filed by Sparrow Oil & Gas, LLC, Greg Pollard and Kiat "Kenny" Tze Goh). Accordingly, Debtor reiterates the history and background of this case as was set forth in the Status Report.

**C.  LITIGATION AND ADMINISTRATIVE PROCEEDINGS**

The Debtor was involved in a significant amount of litigation, prior to the filing of the Petition. That litigation is described and listed in the Debtor's *Statement of Financial Affairs* **[DK #31]**.

The Debtor has participated in the Initial Debtor Interview with the Office of the United States Trustee (the "UST"), the 341 Meeting of Creditors, has filed its Status Report, participated in the hearing on the Status Report and has complied with the mandates of the Bankruptcy Code and the requirements of the UST.

Robert A. Byrd was appointed as the Subchapter V Trustee in this case.

**D.  PROCEEDINGS IN THE BANKRUPTCY COURT**

As noted in the preceding section, the Debtor has complied with the requirements of the Bankruptcy Code and the requirements of the Office of the UST.

A copy of the docket report in this case obtained from PACER is attached hereto and incorporated herein by reference as **Exhibit "C"**.

As mentioned in Article II (B.), a *Motion to Dismiss or, Alternatively, to Modify the Automatic Stay* **[DK #58]** filed by Sparrow Oil & Gas, LLC, Greg Pollard and Kiat "Kenny" Tze Goh is pending before the Court.

## ARTICLE III
## LIQUIDATION ANALYSIS

### A.    FEASIBILITY OF THE PLAN

The equity security interests in the Debtor are worthless in that the Debtor's liabilities exceed its assets. As a result, upon the Effective Date of the Plan, the equity security interests in the Debtor will be cancelled, and existing shareholders will have their equity security interests held for naught and voided.

Geary Trigleth ("Mr. Trigleth") will infuse at least $100,000 into the Debtor on or before the Effective Date, to complete the well in North Dakota and begin drilling operations. In exchange for the $100,000 capital contribution, all of the "new" equity security interests will be reissued to Mr. Trigleth as a result. Mr. Trigleth will be the sole shareholder of the Debtor or its successor.

Mr. Trigleth's vast experience in the oil and gas industry in general, and in drilling/production in particular, will be needed to allow him to resume operations of the Debtor, so that he will again be the driving force and decision maker behind the Debtor's post-confirmation efforts to complete the wells (which the Debtor's existing equity security holders were unable to finalize) and begin production. Although there are risks in every Chapter 11 plan, and there are certainly risks in every oil and gas venture, the Debtor believes that the infusion of funds, and,

especially, the experience and management capabilities of Mr. Trigleth will render the Plan feasible despite these risks that are inherent in this business.

### B.  LIQUIDATION ANALYSIS

While it is difficult to place a liquidation value upon the existing operations of the Debtor (since its "hard" assets are worth little at liquidation), the Debtor estimates that it would recover no more than one half (1/2) of the scheduled asset values from a forced liquidation of its assets. Significantly, it would lose any revenue from the existing oil and gas projects because of the liquidation. And, its interests in its leasehold interests would likely be worthless.

### C.  PLAN ALTERNATIVES

In the North Dakota litigation (described in Debtor's Statement of Financial Affairs) that occurred pre-petition, the Debtor was unable to secure counsel in North Dakota to represent its interests in all of the litigation and it does not have the funds, currently, to secure, or pay, counsel in any of the North Dakota cases. That is one of the reasons why the Debtor's equity security holders (Greg Pollard and Kenny Goh) are pushing to have this case dismissed or the automatic stay lifted to continue the pre-petition litigation - they know the Debtor stands little chance of prevailing on any issue in the state court system in North Dakota, due, at least in part, to the Debtor's inability to secure or pay counsel. Thus, a return to the state court system in North Dakota, if this case were dismissed, or the automatic stay lifted (as the two Debtor's fiduciaries seek), there would be no recovery of any significance for the legitimate Unsecured Creditor body, leaving a reorganization here as the only viable alternative.

### ARTICLE IV
### CLASSIFICATION OF CLAIMS AND TREATMENT OF CLAIMS

### A. CLASSIFICATION OF CLAIMS AND INTERESTS

The Plan divides the Claims against and interests in the Debtor into various classes pursuant to Bankruptcy Code Section 1122. Set forth below is a description of the general classes of Claims against and interests in the Debtor and their treatment under the Plan. A Claim or interest is classified in a particular class only to the extent that the Claim or interest qualifies within the description of the class and is classified in a different class to the extent that the Claim or interest qualifies within the description of that different class.

**Class 1:** Administrative Claims

**Class 2:** Priority Claims

**Class 3:** General, Unsecured Claims

**Class 4:** Equity Interest

### B. TREATMENT OF CLAIMS AND INTERESTS

The Claims as classified in Article IV shall be satisfied as follows:

**Class 1:** Administrative Claims

This class consists of the administrative expenses and Claims of professionals and of the United States Trustee under § 503(b) of the Bankruptcy Code and all fees and charges assessed against the Debtor under Title 28 of the United States Code. The compensation of professionals, such as attorneys and accountants, is subject to approval by the Court. The timing of payment to such professionals for compensation for services rendered and reimbursement of expenses will be made as authorized and allowed by the Court. The Court will review all requests for compensation and reimbursement of expenses.

All Class 1 expenses and Claims for fees will be paid as provided for in future Court orders, or as may be agreed upon.

In Subchapter V cases, debtors may pay post-petition administrative expense Claims throughout the life of the plan. Accordingly, the fees and expenses that are approved of the Subchapter V Trustee and Debtor's counsel may be paid when approved and/or continuing throughout the three (3) year life of the Plan.

### Class 2: Priority Claims

Priority Claims, if any, will be paid within sixty (60) months from the date of the filing of the Petition herein, together with statutory interest thereon.

### Class 3: General, Unsecured Creditors

General, Unsecured Creditors will receive the Debtor's projected disposable income over the life of the Plan. The Debtor's projected disposable income is projected in a statement that is attached, incorporated by reference and marked as **Exhibit "D"**. Obviously, the "start date" of revenues will not occur in September or October of this year, so that the start date of revenues will be later, depending upon Plan Confirmation. The "start date" of the projected disposable income analysis will be extended, consistent with Confirmation/Effective Date.

### Class 4: Equity Interest

As noted, the Debtor's equity security holders that currently exist will have their membership interests cancelled and held for naught, with new equity interests being issued only to Mr. Trigleth.

## ARTICLE V
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Upon entry of an order of Confirmation, each executory contract and/or unexpired lease in which the Debtor is a party that has not been assumed or rejected in conjunction with the Plan before the Confirmation with the approval of the Court shall be deemed rejected. Currently, Debtor anticipates assuming all oil and gas leases listed in its *Amended Schedule G* **[DK #37]** and assuming

assignments of leases/executory contracts for EnTec. Claims created by the rejection of any executory contract or unexpired lease must be served on counsel for the Debtor and filed with the Court no later than sixty (60) days after the entry of a Final Order confirming the Plan. Any Claim not filed within such time will be forever barred as against the estate and the Debtor. All such Claims arising from the rejection of an executory contract or unexpired lease shall be treated under the Plan as General, Unsecured Claims (Class 3) under the Plan. All insurance policies under which the Debtor (or EnTec) is the insured party shall be deemed assumed as of the Confirmation date.

## ARTICLE VI
## CLOSING DATE & EFFECTIVE DATE

The Closing date shall be sixty (60) days after Confirmation of the Plan, or at such other date as the Plan or the order confirming the Plan provides. The Effective Date of the Plan shall be sixty (60) days after the order confirming the Plan becomes final and non-appealable.

## ARTICLE VII
## MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

The Plan will be funded through an infusion of capital from Mr. Trigleth in the sum of $100,000, which will jumpstart the Debtor's efforts to complete the unfinished wells and to begin drilling. This infusion will produce revenue as set out in Exhibit "D".

## ARTICLE VIII
## EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS

Under Subchapter V, the so-called absolute priority rule no longer exists and, in addition, the Debtor is not required to gain acceptance of the Plan by at least one impaired class of Creditors. However, if the Plan is rejected by one or more classes of Claims, that means that, absent further order of the Court, the Subchapter V Trustee will remain "in place."

## ARTICLE IX
## DISCHARGE

All liens securing Claims which are not allowed pursuant to the provisions of the Plan or Bankruptcy Code Sections 502 and 506 shall be invalidated and deemed null and void and of no further force and effect. The invalidation of liens mentioned in the preceding sentence shall not only include liens of Creditors who have filed proofs of claim or otherwise participated in this case, it shall also include Creditors who have not filed proofs of claim and/or have not otherwise "participated" in the case. The Debtor reserves for the future, the right, post-confirmation, to initiate adversary proceedings or contested matters specifically designed to implement the Plan, and in particular this Article IX, with respect to the invalidation of those liens and security interests not specifically addressed in the Plan. The provisions of the confirmed Plan shall bind all Creditors and parties-in-interest, whether or not they accept the Plan and shall discharge the Debtor, if the Plan is consensual, and all persons, corporations or other entities who may be liable to any Creditor in this case for debts of the Debtor from all Claims that arose prior to Confirmation. The holders of Secured Claims are authorized and directed to cooperate with the Debtor in order to properly reflect the liens, Claims, repayments and values of collateral securing those Claims once the Plan is confirmed. The distributions provided under the Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims and interests regarding any of the Debtor's assets or properties, including Claims arising after the date of filing of the Petition and prior to Confirmation. Unless otherwise specifically provided to the contrary herein or in the Confirmation order, on or after Confirmation, all holders of Claims or interests shall be precluded from asserting any Claim against the Debtor or its assets or properties, or against any other person, corporation or entity who may be liable to any Creditor in this case for debts of the Debtor. If the Plan is confirmed as a non-consensual plan, the discharge will only be granted pursuant to 11 U.S.C. §§ 1191(b), 1192. The Debtor will make all disbursements under the Plan.

## ARTICLE X
## REVESTING OF PROPERTY

Except as otherwise provided herein, property of the Debtor shall revest in the Reorganized Debtor on the Effective Date.  Subsequent to the Effective Date, the Reorganized Debtor may buy, use, acquire, and dispose of property, free of any restrictions contained in the Bankruptcy Code.

## ARTICLE XI
## RETENTION OF JURISDICTION

Subsequent to Confirmation of the Plan, the Court will retain jurisdiction to hear and determine all Claims against the Debtor and to hear and to enforce all causes of action which exist on behalf the Debtor, including, without limitation, all turnover and avoidance causes of action granted to the Debtor and that will be owned and possibly pursued by the Debtor, post-confirmation under the Bankruptcy Code.  The Court will also retain jurisdiction to construe and apply the provisions of the Plan, including the administration and implementation of the Plan, to enter orders in aid of consummation of the Plan, to effectuate the abandonment of assets, if necessary, to issue any orders in connection with the Plan in these proceedings, to hear and decide applications for compensation and reimbursement of expenses, to resolve objections to Claims, adversary proceedings, and matters pending independently of the Plan and to close the Chapter 11 case.

The Court shall also retain jurisdiction until the Plan has been fully consummated including, but not limited to, the following purposes:

1.	Determination of all questions and disputes regarding title to the assets of the Debtor's estate and determination of all causes of action, objections to Claims and Debtor counterclaims, controversies, disputes and conflicts, whether or not subject to action pending as of

the Confirmation date, between the Debtor and any party, including, but not limited to, the right of the Debtor to recover assets pursuant to the provisions of Title 11 of the United States Code and, in particular, Chapter 5 Claims and causes of action in Title 11.

2. The correction of any defect, curing of any omission, or reconciliation of any inconsistency in the Plan or the order of Confirmation as may be necessary to carry out the purpose and intent of the Plan.

3. Enforcement, modification or interpretation of the terms and the conditions of the Plan to the extent of appropriate under the Bankruptcy Rules and Title 11 of the United States Code.

4. Entry of any order, including injunctions, necessary to enforce the title, rights and powers as the Court may deem necessary. This shall include, but not be limited to, injunctions or other relief seeking to invalidate the alleged liens and/or security interests of purported Secured Creditors, who are not provided for as Secured Creditors under the Plan. Further, this retention and reservation of jurisdiction shall apply to any Claims, causes of action, adversary proceedings or contested matters which seeks, post-confirmation, to invalid liens and/or security interests of Creditors who have either participated in the case but declined to cancel their purported liens and/or security interests and/or to those Creditors who have deemed not to have "participated" in the case, and as to whom the purported liens and/or security interests they purportedly hold have not yet been cancelled of record.

5. Entry of an order concluding and terminating this case upon completion of this provisions.

# ARTICLE XII
# DEFAULT UNDER THE PLAN

There are default provisions "built in" with respect to Claims of certain Secured Creditors and, as negotiations go forward, many of the Secured Creditors whose Claims are resolved will also have built in default or so-called "drop dead" provisions.

To the extent Claims of Secured Creditors are not negotiated or do not contain default provisions, the default provisions of Secured Creditors' Claims are: in the event the Debtor defaults upon payment of any Secured Creditor Claim that does not contain specific default provisions in either prior adequate protection orders or in the order confirming the Plan, the Secured Creditor shall provide notice to the Debtor and its counsel of the default. In the event the Debtor does not cure the existing default within twenty (20) days of the receipt of the electronic notice of default, the automatic stay provisions of 11 U.S.C. § 362 will be lifted and terminated, so as to allow the affected Secured Creditor to exercise its remedies under applicable state law and its loan and collateral documents.

With respect to the Claims of Unsecured Creditors, in the event Unsecured Creditors are not paid the Debtor's projected disposable income, on a Pro-Rata basis, upon the first, second and third anniversary dates of this three (3) year Plan, the affected Unsecured Creditor or Creditors shall provide notice to the Debtor and its counsel of the default for failure to pay the projected disposable income in years one, two or three of the Plan. In the event the Debtor does not cure the default within twenty (20) days of the receipt of notice of the default, and in the further event the Debtor does not obtain an order of the Court modifying the Plan and extending the automatic stay, then the automatic stay provisions of 11 U.S.C. § 362 will be lifted and terminated, so as to allow the

affected Unsecured Creditor to exercise its remedies under applicable state law and its Unsecured Claims evidenced by whatever documents it may hold and that it relies upon to support its Claims.

## ARTICLE XIII
## CONCLUSION

The Debtor urges the Creditors to vote to adopt the Plan.

THIS, the 14th day of August, 2023.

>Respectfully submitted,
>
>BISON LAND & MINERALS, LLC
>
>By Its Attorneys,
>
>LAW OFFICES OF CRAIG M. GENO, PLLC
>
>By: */s/ Craig M. Geno*
>     Craig M. Geno

OF COUNSEL:

Craig M. Geno; MSB No. 4793
LAW OFFICES OF CRAIG M. GENO, PLLC
587 Highland Colony Parkway
Ridgeland, MS 39157
601-427-0048 - Telephone
601-427-0050 - Facsimile
cmgeno@cmgenolaw.com
N:\Firm Data\Users\Bankrupt\Bison Land & Minerals, LLC\SubV Plan\Revised SubV Plan 8-14-23.wpd

## CERTIFICATE OF SERVICE

I, Craig M. Geno, do hereby certify that I have caused to be served this date, via electronic filing transmission, a true and correct copy of the above and foregoing to the following:

| | |
|---|---|
| Christopher J. Steiskal, Esq. | Robert A. Byrd, Esq. |
| Office of the United States Trustee | Subchapter V Trustee |
| christopher.j.steiskal@usdoj.gov | rab@byrdwiser.com |

THIS, the 14th day of August, 2023.

*/s/ Craig M. Geno*
Craig M. Geno